**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ABIGALE K. JOHN,<br><br>                    Plaintiff,<br><br>        -against-<br><br>BROOKLYN EYE CENTER, HAROONI &<br>SHEINDLIN M.D. P.C., CHRISTINA VASQUEZ and<br>GISEL GARRASTEGUI,<br><br>                    Defendants. | Docket No.:<br><br><br><br>**COMPLAINT**<br>**AND JURY TRIAL DEMAND** |

Plaintiff Abigale K. John, by her attorneys, SHEGERIAN & ASSOCIATES, alleges, for her Complaint against Defendants Brooklyn Eye Center, Harooni & Sheindlin M.D. P.C., Christina Vasquez ("Vasquez") and Gisel Garrastegui ("Garrastegui") upon information and belief, and at all times relevant, as follows:

**PRELIMINARY STATEMENT**

1.      Defendants Brooklyn Eye Center ("Brooklyn Eye") and Harooni & Sheindlin M.D. P.C. ("Harooni") intentionally discriminated against Plaintiff Abigale K. John ("John") based on her pregnancy while employed at the Church Avenue and Bedford Avenue Brooklyn office locations after disclosing her pregnancy to her supervisor, Vasquez who notified the practice's Regional Manager, Garrastegui. Once Plaintiff disclosed she was pregnant during a meeting with her supervisor, Defendants removed Plaintiff from working at the Church Avenue location and relocated her to work at the Baltic Avenue location instead, the locations where Garrastegui worked, Garrastegui requested Vazquez gather all of Plaintiff's patient work ups for her inspection, which she had not previously done and Defendants actively prevented her from receiving

1

additional training as an Eye Technician while offering such training to less qualified employees. Further, Defendants retaliated and permitted retaliation against Plaintiff based on her opposition to discrimination. Ultimately, Plaintiff was terminated on June 21, 2021 despite no prior poor performance evaluations from Defendants.

## NATURE OF THE ACTION

2.      This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e to 2000e-17 ("Title VII"); the New York State Human Rights Law, N.Y. Exec. § 296, *et seq*. ("NYHRL") and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101*, et seq*. ("NYCHRL"), to remedy discrimination based upon sex and pregnancy, disparate treatment, hostile work environment, retaliation, aiding and abetting and other adverse action perpetrated by Defendants. Plaintiff seeks monetary damages to remedy her employment claims against Defendants.

3.      After disclosing her pregnancy on June 2, 2021, Plaintiff John was discriminated against by two supervisors, Vasquez and Garrastegui, who swiftly retaliated against and wrongfully terminated her based on her sex and pregnancy on June 21, 2021 despite her being qualified for her position and eager to learn additional procedures during her employment.

## JURISDICTION AND VENUE

4.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3). This Court has supplemental jurisdiction over Plaintiff's New York State and New York City's statutory causes of action prohibiting discrimination pursuant to 28 U.S.C. § 1367(a).

5.      Plaintiff asserts supplemental State and City law claims pursuant to the New York State Constitution, New York Executive Law § 296, *et seq*. and New York City Administrative Code § 8-101, *et seq*.

6.      Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, and application and enforcement of Defendants' equal employment opportunity ("EEO") policies, affecting the hiring, promotion, work assignments, discipline and termination of its employees, may be found in this District.

7.      All conditions precedent to jurisdiction have occurred or been complied with including and in particular:

a.    In March 2022, Plaintiff filed a Charge of Discrimination ("the Charge dated March 18, 2022") based on sex, pregnancy and retaliation with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the adverse actions of which Plaintiff John complains in this action.

b.    A Dismissal and Notice of Rights was issued by the EEOC on September 29, 2022. Plaintiff duly filed her Complaint within 90 days of receipt of the Dismissal and Notice of Rights. See attached as **Exhibit A**, a copy of the Charge dated March 18, 2022 and attached as **Exhibit B**, Dismissal and Notice of Rights dated September 29, 2022.

## PARTIES

8.      Plaintiff is an African American female and citizen of the United States of America who, at all times relevant, resides in Kings County, State of New York.

9.    Plaintiff began her employment with Defendants as an Eye Technician at Defendants' ophthalmology office located at 1530 Bedford Avenue, Brooklyn, New York from on or about March 8, 2021 until June 17, 2021.

10.    Upon information and belief, Defendant Brooklyn Eye is a domestic professional service corporation duly organized and existing under and by virtue of the laws of the State of New York where it is incorporated with its principal place of business at 207 Prospect Park SW, Brooklyn, New York 11218.

11.    Upon information and belief, at all relevant times, Defendant Brooklyn Eye is an employer as that term is used in Title VII, the NYHRL § 296, *et seq.,* and NYCHRL § 8-101, *et seq.*

12.    Upon information and belief, at all relevant times, Defendant Brooklyn Eye is an employer as that term is used under the NYCHRL, because it has four (4) or more employees in its employ and conducts business in the State and City of New York.

13.    Upon information and belief, Defendant Harooni is a domestic professional service corporation duly organized and existing under and by virtue of the laws of the State of New York where it is incorporated with its principal place of business at 207 Prospect Park SW, Brooklyn, New York 11218.

14.    Upon information and belief, at all relevant times, Defendant Harooni is an employer as that term is used in Title VII, the NYHRL § 296, *et seq.,* and NYCHRL § 8-101, *et seq.*

15.    Upon information and belief, at all relevant times, Defendant Harooni is an employer as that term is used under the NYCHRL, because it has four (4) or more employees in its employ and conducts business in the State and City of New York.

16.    Upon information and belief, Defendant Vasquez was at all relevant times Plaintiff's direct supervisor at Defendants' Bedford Avenue and Church Avenue location at 1530 Bedford Avenue in Brooklyn, New York.

17.    Upon information and belief, Defendant Vasquez, as Plaintiff's direct supervisor and a member of the management staff of the practice's office employed by Defendants Brooklyn Eye and Harooni, in her individual and official capacity, acted as an agent, employee, licensee, servant and manager for Defendants Brooklyn Eye and Harooni.

18.    Upon information and belief, Defendants Brooklyn Eye and Harooni owned, managed, controlled, maintained, employed and/or supervised  Defendant Vasquez, individually and in her official capacity as a Plaintiff's supervisor.

19.    Upon information and belief, Defendant Garrastegui was at all relevant times Plaintiff's direct supervisor at Defendants' Bedford Avenue and Church Avenue location at 1530 Bedford Avenue in Brooklyn, New York.

20.    Upon information and belief, Defendant Garrastegui, as Plaintiff's direct supervisor and a member of the management staff of the practice's office employed by Defendants Brooklyn Eye and Harooni, in her individual and official capacity, acted as an agent, employee, licensee, servant and manager for Defendants Brooklyn Eye and Harooni.

21.    Upon information and belief, Defendants Brooklyn Eye and Harooni owned, managed, controlled, maintained, employed and/or supervised Defendant Garrastegui, individually and in her official capacity as a Plaintiff's supervisor.

## STATEMENT OF FACTS

**I.    PLAINTIFF'S EMPLOYMENT HISTORY AND DEFENDANTS' DISCRIMINATORY AND RETALIATORY PRACTICES**

22.    On or about March 8, 2021, Plaintiff John, an African American, 32-year-old

woman became employed by Defendant Brooklyn Eye, an ophthalmology practice with nine locations owned by retina specialists, Mark Harooni, M.D. and Jonathan Sheindlin, M.D. from March 8, 2021 until June 17, 2021.

23.     On or about March 8, 2021, Plaintiff John was hired by Office Manager, Maggie Kruk ("Kruk") as a full-time Eye Technician to work at Defendants' Church Avenue and Bedford Avenue locations in Brooklyn, New York.

24.     During her hiring meeting with Kruk, Plaintiff requested to be paid $19.00 per hour and was denied. Kruk informed her after three months of employment, they would revisit her request to be paid $19.00 per hour.

25.     Defendants Brooklyn Eye and Harooni hold themselves out to be a premiere ophthalmology practice specializing in all areas of eye care but notably diseases and surgery of the Retina and Vitreous.

26.     During her employment and before disclosing her pregnancy to Defendants, Plaintiff received on the job training from other Eye Technicians during the first two weeks of her employment. Her duties involved conducting patient eye exams, completing work ups, asking patients particular questions notated in his or her chart by an optometrist, checking glucose levels, entering data into the system, checking a patient's eye pressure and putting eye drops into the eyes if necessary.

27.     Upon hire, Plaintiff was required to complete a 90-day probationary period spanning from March 8, 2021 to June 8, 2021.

28.     On June 2, 2021, Plaintiff met with her direct supervisor, Defendant Vazquez. Prior

to this meeting, Plaintiff had never received a write up, disciplinary action or performance evaluation from her supervisor, any manager or physician of the practice. During her meeting with Vazquez, Plaintiff disclosed she was pregnant.

29.     Defendant Vazquez then asked her how far along she was, and Plaintiff responded she was approximately five (5) months pregnant at that time. Plaintiff asked her supervisor when she should inform Garrastegui, the Regional Manager for the practice, of her pregnancy, and Vazquez instructed her to wait to tell Defendants' management until the day before her actual birthing due date.

30.     At that time, Plaintiff was unaware Vazquez and Garrastegui were friends who socialized frequently, and that Vasquez would disclose her pregnancy to her Regional Manager shortly after their meeting.

### Brooklyn Eye Center Discriminated and Retaliated Against John Because of Her Gender and Pregnancy

31.     Immediately after revealing her pregnancy to Vazquez, Plaintiff was treated differently by Garrastegui. Garrastegui began constantly staring down at John's stomach every time she was near Plaintiff, and if she spoke to her, she did not look Plaintiff in the eye or even look her in her face but focused her gaze entirely upon John's stomach. This increasingly made Plaintiff feel uncomfortable.

32.     On various mornings, Plaintiff stated, "Good morning" to Garrastegui as was polite upon arriving at the office and was now ignored. Garrastegui's overall attitude towards Plaintiff had drastically devolved. Plaintiff was switched from working at both the Church Avenue and Bedford Avenue locations to Bedford Avenue and Baltic Avenue, the locations where Garrastegui worked. Additionally, Garrastegui requested Vazquez gather all of Plaintiff's patient work ups for her inspection, which she had not previously done.

7

33.     The singular criticism Plaintiff received from a direct supervisor during her probationary period and prior to disclosing her pregnancy was to "pick up the pace" from Garrastegui when completing patient work ups after approximately three months of employment.

34.     On one other occasion, Dr. Shobit Rastogi was critical of Plaintiff's decision to place an elderly patient in a particular exam room and questioned her if she handled the administrative tasks of working up a patient correctly. After realizing Plaintiff had completed the appropriate tasks, he later apologized for the misunderstanding as her decision was in the best interest of the patient given the circumstances.

35. At the end of the exchange, Dr. Rastogi stated, "I'm not trying to pick on you", checked Plaintiff's entry of patient information into the practice's computer system and remarked, "I'm sorry, I'm sorry", tapped her on the shoulder and walked out of the room. Plaintiff did not receive any formal write up or performance evaluation concerning that incident.

36. While working for Defendants, Plaintiff consistently received positive feedback from Ophthalmologists, Technician Supervisor, Raven Melendez ("Melendez"), and Vazquez, for example. Both Melendez and Vasquez were tasked with initially training Plaintiff. Each Monday and Wednesday, Plaintiff worked closely with Dr. Mark Harooni, one of the practice's owners, and she never received criticism from the physician during their interactions regarding Plaintiff's performance of her duties.

37. Plaintiff had not received any complaints from patients of the practice either.

38. During her employment, Plaintiff was eager to learn how to properly conduct an advanced eye testing procedure, which would require training from another Eye Technician already proficient in administering the test. Despite her multiple requests to management for training to perform the test, both Melendez and Janelle Flores-Caban ("Flores-Caban"), Surgical

Coordinator for the practice, responded, "Not yet," and denied Plaintiff's requests, effectively preventing John from furthering her knowledge of her job duties.

39. Shortly thereafter, Plaintiff then witnessed an intern, Jonathan (last name unknown) receiving training on how to perform the exact testing procedure she repeatedly inquired about, and he had far less experience than John at the time.

40. Additionally, Plaintiff also witnessed Surgical Coordinator, Flores-Caban's daughter, Alyssa Flores, being trained in the same eye testing. She never received the training to conduct this eye test.

41. Despite Plaintiff's efforts to become more proficient at her duties, she was rebuffed by management.

### Defendants Retaliated Against Plaintiff John and Pretextually Terminated Her Due to Her Gender and Pregnancy

42. On or about June 17, 2021, after her shift ended, at approximately 4:20 p.m., Defendant Garrastegui called Plaintiff in to meet with her and Vazquez under the guise of completing her performance evaluation as her probationary period had recently ended on June 8, 2021.

43. Defendant Garrastegui stated to John, "This will only take five minutes." Prior to this meeting, Plaintiff was not informed that any disciplinary action was in fact imminent against her nor was she given any notice that she would be terminated that day.

44. Despite being continuously employed by Defendants without disciplinary action or incident that had ever been brought to Plaintiff's attention by her supervisors for over three (3) months, her request for a raise had not been addressed.

45. During her employment, Plaintiff had not received any formal performance review with a supervisor despite expressing interest in receiving substantive feedback. During the June 17th meeting, instead of evaluating Plaintiff's performance or offering any constructive criticism,

Garrastegui abruptly told Plaintiff she received negative feedback specifically, "many complaints from doctors" as well as coworkers via emails.

46. As a first time critique, Defendant Garrastegui informed Plaintiff she was failing to place her initials next to her name on her work ups after seeing patients. Defendant Garrastegui told her she was putting forth a "lack of effort" in completing her duties and therefore would no longer be needed at the office.

47. Plaintiff was shocked to hear this as she had not previously received these criticisms of her performance or was ever disciplined for any workplace behaviors. After the meeting took place, Plaintiff confirmed with coworkers, Ula (last name unknown), Serrano (last name unknown) and Camilia if they had lodged any complaints about her to management, and they stated they had not.

48. Defendants Garrastegui and Vazquez did not provide any names of those alleged to have emailed complaints concerning Plaintiff. In response, during the meeting Plaintiff stated, "I feel that I have been making a lot of effort to learn and to understand everything that was taught to me. I have been trying my best to do my job in a timely manner and to the best of my ability. Gisele you said that we would have a conversation about how I was doing and we never had a conversation. I haven't heard any doctors complaining…"

49. Defendant Garrastegui then interrupted Plaintiff reiterating she was no longer needed at the office and would not let Plaintiff continue speaking. This termination conversation lasted approximately 10 minutes. At the conclusion of the conversation, Plaintiff was not aware of any employee of Defendants being terminated for a general "lack of effort."

50. In fact, two (2) employees had engaged in a physical altercation at the office, and

Defendants chose to maintain their employment despite such egregious conduct. Further, one of the Eye Technicians, Serrano was notoriously slow in performing his duties and physicians often complained about him. At the time Plaintiff was terminated, Serrano had been employed with Defendants Brooklyn Eye and Harooni for approximately four years. Occasionally, physicians of the practice would address the Eye Technicians as a collective to advise them of areas requiring improvement but rarely singled out a particular employee who was making an error. For example, physicians reminded employees to increase their 'attention to detail' when noting the left eye versus the right eye on patients' charts.

51. Only if there was a significant mistake would an Eye Technician be singled out and confronted by a physician or supervisor.

52. During the June 2nd meeting, Plaintiff raised the issue this was the first time these criticisms were being brought to her attention and had no disciplinary action history. This was ignored by Garrastegui and Vasquez.

53. On or about June 17, 2021, Plaintiff was terminated from her employment. Following her termination, she left the office immediately. Plaintiff had never received a negative performance evaluation, formal disciplinary action, warning, write up or suspension during her employment with Brooklyn Eye Center. Only after disclosing her pregnancy, did her supervisors take significant issue with her performance and seek her termination.

54. Plaintiff's gender and the disclosure of her pregnancy resulted in discrimination and swift retaliation from Defendants specifically supervisors, Garrastegui and Vazquez and ultimately her wrongful termination in violation of Title VII, the NYSHRL and the NYCHRL.

## II.    PLAINTIFF'S FORMAL EEOC CHARGE OF DISCRIMINATION

55.    On March 8, 2021, Plaintiff filed a Charge of Discrimination with the EEOC to complain of unfair discriminatory treatment based on her sex and pregnancy and retaliation she received during her employment with Defendants. *See* **Exhibit A**. Thereafter, Plaintiff received a Dismissal and Notice of Rights dated September 29, 2022. *See* **Exhibit B**.

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq*., and its Amendments for Sex and Pregnancy Discrimination and Disparate Treatment — Against All Defendants**

56. Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

57. Defendants discriminated against Plaintiff on the basis of her sex and pregnancy in violation of Title VII. Defendant engaged and allowed its employees, managers, and agents to engage in a course of conduct which included without limitation: removing Plaintiff from working at the Church Avenue location and relocating her to work at the Baltic Avenue location instead, the locations where Garrastegui worked, gathering all of Plaintiff's patient work ups for Defendants' inspection, which was not previously done and actively denying her requests to receive additional training in a more advanced eye treatment procedure while offering such training to less qualified employees. Such conduct is demonstrative of Defendants' reckless indifference to the laws prohibiting discrimination.

58. Defendants' willful acts and omissions constitute unlawful discrimination against Plaintiff based on her religion in violation of Title VII.

59. But for Plaintiff's sex and pregnancy, Plaintiff would not have been harassed, treated unfairly, disciplining, denied promotion, retaliated against and constructively discharged.

60. As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses,

benefits, promotional opportunities and other prerequisites of employment.

61. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

## SECOND CAUSE OF ACTION

**Violation Of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq*., and its Amendments for Hostile Work Environment on the Basis of Sex and Pregnancy — Against All Defendants**

62. Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

63. Defendants' persistent, frequent and pervasive conduct created an atmosphere that was hostile, abusive, humiliating and degrading to Plaintiff as a pregnant Eye Technician.

64. Defendants subjected Plaintiff to a hostile work environment permeated with harassment based on religion sufficiently severe and pervasive to alter the conditions of Plaintiff's employment in violation of Title VII.

65. As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

66. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

## THIRD CAUSE OF ACTION

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq*., and its Amendments for Retaliation — Against All Defendants**

67. Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

68. Plaintiff engaged in protected activities when she made multiple complaints of discrimination to Defendants' management on June 21, 2020 upon realizing her termination.

69. As a result of and in response to these complaints and Plaintiff's opposition to discrimination and denial of Plaintiff's request for additional training but providing it to less qualified employees, Plaintiff was subject to ridicule and harassment Plaintiff, and was told, in substance, that she needed to wait and was not competent enough to receive the training.

70. By the acts and practices described above, Vasquez and Garrastegui retaliated against Plaintiff for engaging in protected activities in violation of Title VII.

71. Defendant Vasquez notified Defendant Garrastegui to Plaintiff's pregnancy leading Garrastegui, Regional Manager to target, harass, bully and retaliate against Plaintiff for engaging in protected activities in violation of Title VII and failed to take reasonable actions to address such behavior even after Plaintiff brought it to Defendants' attention culminating in Plaintiff's ultimate termination.

72. As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities, and other prerequisites of employment.

73. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation.

### FOURTH CAUSE OF ACTION

**Violation of the New York State Human Rights Law for Gender and Pregnancy Discrimination — Against All Defendants**

74. Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

75. New York Execute Law §296(1)(a) provides that: "It shall be an unlawful

discriminatory practice for an employer . . . because of the age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

76. By the aforementioned acts, Plaintiff has been discriminated against by Defendants, on the basis of her gender and pregnancy in violation of the New York State Human Rights Law ("NYSHRL").

77. But for Plaintiff's gender and pregnancy, she would not have been discriminated against, harassed, disciplined, denied additional training, retaliated against and unlawfully discharged. Any reasons proffered by Defendants for unfairly treating Plaintiff by refusing are a pretext for discriminating against Plaintiff based on her gender and pregnancy.

78. Defendants' acts and omissions constitute unlawful and willful discrimination against Plaintiff based on her gender and pregnancy in violation of the NYSHRL.

79. As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities, and other prerequisites of employment.

80. As a direct and proximate result of Defendants' unlawful termination, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

## **FIFTH CAUSE OF ACTION**

**Violation of the New York City Human Rights Law for Sex and Pregnancy Discrimination — Against All Defendants**

81. Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

82. The New York City Administrative Code §8-107(1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

83. By the aforementioned acts, Defendants discriminated against Plaintiff, by creating and maintaining discriminatory working conditions, refusing requests for reasonable accommodation, and otherwise discriminating against Plaintiff because of her sex and pregnancy.

84. But for Plaintiff's sex and pregnancy, she would not have been discriminated against, harassed, disciplined, retaliated against, denied additional training and suffered unlawful termination.

85. Defendants' acts and omissions constitute unlawful and willful discrimination against Plaintiff based on her sex and pregnancy in violation of the NYCHRL.

86. As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities, and other prerequisites of employment.

87. As a direct and proximate result of Defendants' unlawful termination, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

## SIXTH CAUSE OF ACTION

**Violation of New York State Human Rights Law for Hostile Work Environment on the Basis of Sex and Pregnancy — Against All Defendants**

88. Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs as if fully set forth herein.

89. Defendants' persistent, frequent and pervasive conduct created an atmosphere that was hostile, abusive, humiliating and degrading to Plaintiff as a pregnant female Eye Technician.

90. Defendants subjected Plaintiff to a hostile work environment permeated with harassment based on sex and pregnancy sufficiently severe and pervasive to alter the conditions of Plaintiff's employment in violation of NYHRL.

91. As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

92. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

## SEVENTH CAUSE OF ACTION

**Violation Of New York City Human Rights Law For Hostile Work Environment on the Basis of Sex and Pregnancy — Against All Defendants**

93. Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

94.   Defendants' persistent, frequent and pervasive conduct created an atmosphere that was hostile, abusive, humiliating and degrading to Plaintiff as a pregnant Eye Technician.

95. Defendants subjected Plaintiff to a hostile work environment permeated with harassment based on sex and pregnancy sufficiently severe and pervasive to alter the conditions of Plaintiff's employment in violation of NYCHRL.

96. As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

97. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has

and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

## EIGHTH CAUSE OF ACTION

### Violation of New York State Human Rights Law For Retaliation — Against All Defendants

98. Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

99. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any such activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practice forbidden under this article."

100.    Plaintiff engaged in protected activities when making multiple complaints of discrimination against Defendants to her supervisors, the individual Defendants regarding discrimination.

101.    Plaintiff made multiple complaints and experienced adverse employment actions as a result including, but not limited to, the following: removing Plaintiff from working at the Church Avenue location and relocating her to work at the Baltic Avenue location instead, the locations where Garrastegui worked, gathering all of Plaintiff's patient work ups for Defendants' inspection, which was not previously done and actively denying her requests to receive additional training in a more advanced eye treatment procedure while offering such training to less qualified employees. Such conduct is demonstrative of Defendants' reckless indifference to the laws prohibiting discrimination.

102.    By the acts and practices described above, Defendants retaliated against Plaintiff for engaging in protected activities in violation of the NYHRL.

103.    By the above-described unlawful conduct, the individually named Defendants Vasquez and Garrastegui, in their individual and official capacities, retaliated against Plaintiff for engaging in protected activities in violation of the NYHRL.

104.    As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities, and other prerequisites of employment.

105.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation.

## NINTH CAUSE OF ACTION

**Violation Of New York City Human Rights Law For Retaliation — Against All Defendants**

106.    Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

107.    New York City Administrative Code §8-107(7) provides that: "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has opposed any practice forbidden under this chapter."

108.    Plaintiff engaged in protected activities when making multiple complaints of discrimination against Defendants to her supervisors, individual Defendants.

109.    Plaintiff made multiple complaints and experienced adverse employment actions as a result including, but not limited to, the following: removing Plaintiff from working at the Church Avenue location and relocating her to work at the Baltic Avenue location instead, the locations where Garrastegui worked, gathering all of Plaintiff's patient work ups for Defendants' inspection, which was not previously done and actively denying her requests to receive additional

training in a more advanced eye treatment procedure while offering such training to less qualified employees. Such conduct is demonstrative of Defendants' reckless indifference to the laws prohibiting discrimination.

110.     By the acts and practices described above, Defendants retaliated against Plaintiff for engaging in protected activities in violation of the NYCHRL.

111.     By the above-described unlawful conduct, the individually named Defendants Vasquez and Garrastegui, in their individual and official capacities, retaliated against Plaintiff for engaging in protected activities in violation of the NYCHRL.

112.     As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities, and other prerequisites of employment.

113.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation.

### TENTH CAUSE OF ACTION

**Violation of New York City Human Rights Law For Aiding, Abetting, Inciting, Compelling and Coercing Religious Forbidden Acts — Against Defendants Christina Vasquez and Gisel Garrastegui**

114.     Plaintiff hereby repeats and re-alleges each allegation contained in the paragraphs above as if fully set forth herein.

115.     The New York City Administrative Code §8-107(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

116.     Defendants Vasquez and Garrastegui engaged in conduct that aided, abetted,

incited, compelled and coerced acts forbidden under New York City Human Rights Law, Administrative Code § 8-101, *et seq*., in violation of Administrative Code § 8-107(6).

117.   As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues of fact and damages stated herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Abigale K. John requests judgment against Defendants Brooklyn Eye Center, Harooni & Sheidlin M.D. P.C., Christina Vasquez and Gisel Garrastegui and respectfully requests that this Court:

(a)   Declare the discriminatory acts and practices of Defendants complained of herein violated Plaintiff John's rights under Title VII, the NYHRL and the NYCHRL;

(b)   Grant Plaintiff actual, consequential, liquidated, punitive and any other damages that the Court may deem appropriate against Defendants;

(c)   Order Defendants to pay lost, foregone and future wages to Plaintiff John according to proof;

(d)   Order Defendants to pay Plaintiff's reasonably incurred attorneys' fees, costs and disbursements;

(e)   Order pre-judgment and post-judgment interest on all damages awarded;

(f)   Grant an award of punitive damages in an amount to be determined at trial;

(g)   Grant Plaintiff such other and further relief as this Court deems just and proper.

Dated: New York, New York
       October 13, 2022

                                        _Olivia Clancy_
                                        Olivia M. Clancy
                                        SHEGERIAN & ASSOCIATES
                                        *Attorneys for Plaintiff*
                                        ABIGALE K. JOHN
                                        90 Broad Street, Suite 804
                                        New York, New York 10004
                                        Tel: (212) 257-8883
                                        oclancy@shegerianlaw.com