**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
ABIGALE K. JOHN,

                Plaintiff,

        -against-

BROOKLYN EYE CENTER, HAROONI & SHEINDLIN
M.D. P.C., CHRISTINA VASQUEZ and GISEL
GARRASTEGUI,

                Defendants.
-------------------------------------------------------------------x

                           **MEMORANDUM AND ORDER**
                           22-CV-06190 (OEM) (VMS)

ORELIA E. MERCHANT, United States District Judge:

      On October 13, 2022, plaintiff Abigale K. John ("John" or "Plaintiff") brought this action against Brooklyn Eye Center, Harooni & Sheindlin M.D., P.C., Christina Vazquez ("Vazquez")[1], and Gisel Garrastegui ("Garrastegui") (collectively "Defendants") alleging sex and pregnancy discrimination and disparate treatment; creation of a hostile work environment; and retaliation pursuant to Title VII (42 U.S.C. § 2000e *et seq.*) and New York State and City Human Rights Laws ("NYSHRL" and "NYCHRL").  *See* Plaintiff's Complaint ("Compl."), ECF 1 ¶¶ 12-21. Defendants move for summary judgment on all of Plaintiff's claims.  Defendants' Memorandum of Law ("Defs' Mem."), ECF 49.  For the following reasons Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's Title VII and NYSHRL claims.  The Court dismisses Plaintiff's NYCHRL claims without prejudice.

## BACKGROUND

      John began working as an eye technician at Brooklyn Eye Center on March 9, 2021. Plaintiff's Response to Defendants' Rule 56.1 Statement ("Pl.'s 56.1"), ECF 40-3, ¶ 6. John began

---

[1] The parties interchangeably use two spellings: "Vasquez" and "Vazquez."  The Court will refer to this defendant herein as "Vazquez."

her employment at the Church Avenue and Bedford Avenue locations of Brooklyn Eye Center. Declaration of Abigale K. John ("John Decl."), ECF 47, ¶ 3.  Prior to her employment at Brooklyn Eye Center, John had no experience as an eye technician.  Pl.'s 56.1¶ 1.

Upon her hire, John was required to complete a 90-day probationary period.  *Id.* ¶ 4.  John asserts that she received only two weeks of training during her probationary period and that when she requested additional training from a senior technician, Raven Melendez ("Melendez"), and Vazquez, they denied her request.  John Decl.  ¶ 5.

John asserts that she disclosed she was five months pregnant to Vazquez during a meeting in early June 2021.[2]  She says that during this meeting Vazquez told her "to wait to tell management until the day before [her] actual birthing due date."  John Decl. ¶ 7.  Vazquez disputes this, claiming that she told Plaintiff to let management know as soon as possible, but never told Garrastegui or anyone else at Brooklyn Eye Center that John was pregnant.  Declaration of Kristina Vazquez ("Vazquez Decl."), ECF 49-1, ¶¶ 12-14.  It is John's belief that Vazquez disclosed her pregnancy to Garrastegui, John Decl. ¶ 8, but John has no personal knowledge that Vazquez did so.  Pl.'s 56.1 ¶ 18.  Garrastegui asserts that she was never aware John was pregnant during John's employment at Brooklyn Eye Center.  Declaration of Gisel Garrastegui ("Garrastegui Decl.") ECF 49-2, ¶¶ 7-8.

---

[2] The unverified Complaint alleged that John disclosed her pregnancy on June 2, 2021.  Compl. ¶¶ 3, 27, 28; *see* Defs' Mem. at 8.  Defendants do not submit any date on which Plaintiff disclosed her pregnancy to Vazquez in their 56.1 Statement of Material Facts.  *See generally* Defs' 56.1.  In Plaintiff's Response to Defendants' 56.1 Statement, Plaintiff says she disclosed her pregnancy on June 2, 2021.  *See* Pl.'s 56.1 ¶¶ 11, 20.  In her deposition, John estimates that she disclosed her pregnancy about a week before her June 17, 2021 termination.  John Dep. at 24:11-25.  Finally, John's Declaration in Support of her Opposition to Defendants' Motion for Summary Judgment says that John disclosed her pregnancy on June 10, 2024.  John Decl. ¶ 6.  "It is blackletter law that an unverified complaint is not evidence that can be relied upon at summary judgment."  *Caro Capital, LLC v. Koch*, 653 F. Supp. 3d 108, 132 (S.D.N.Y. 2023).  The only evidence submitted regarding this fact–John's declaration and deposition, point to June 10, 2021, as the date of disclosure.  Therefore, for the purposes of this Memorandum and Order only, the Court accepts June 10, 2021 as the date John informed Vazquez of her pregnancy.  Importantly, whether the pregnancy was disclosed on June 2 or June 10 (both prior to John's termination) is not a material fact over which a dispute would entitle Plaintiff to proceed to trial.

John claims that, after she revealed her pregnancy, Garrastegui began treating her differently by "constantly staring down at [her] stomach," "no longer look[ing] [her] in the eye or in the face" making her uncomfortable, no longer saying good morning to her, and exhibiting an overall change of "attitude." John Decl. ¶¶ 9-10. John also contends that Garrastegui intentionally switched John from working at her regular work assignment at the Church Avenue and Bedford Avenue locations to the Bedford Avenue and Baltic Avenue locations. *Id.* ¶ 10. John alleges that Garrastegui requested Vazquez gather all of John's patient work ups for inspection, which John claims Vazquez had not previously done. *Id.* John "felt [Garrastegui] was targeting [her] for termination by looking for any mistakes or reasons to let me go." *Id.* Garrastegui disputes these allegations. Garrastegui Decl. ¶¶ 9-16. However, the parties agree that Garrastegui and Vazquez never made any remarks about John's pregnancy to her. Pl.'s 56.1 ¶¶ 21-22.

John asserts that prior to disclosing her pregnancy she "never received a write up, disciplinary action or performance evaluation from any supervisors, office managers or physicians of the practice," and the only performance-related feedback she received was being told to "pick up the pace." John Decl. ¶¶ 6, 11. The parties do not dispute that John asked in March of 2021 to leave work early and was told that if she wanted to leave early, she would need to email her supervisor, Vazquez. Pl.'s 56.1 ¶ 9.

Vazquez and Garrastegui both claim that John's job performance was poor throughout her employment at Brooklyn Eye Center. *See* Vazquez Decl.; Garrastegui Decl. Specifically, Vazquez claims that during John's training, John "couldn't retain the information [or] understand the purpose" of the patient work ups, Vazquez Decl. ¶¶ 3-4, repeatedly asked the same questions, such as whether a patient's eyes should be dilated, *id.* ¶¶ 5-6, and failed "to make the necessary progress" needed for her position. *Id.* ¶ 7. Vazquez also says that on multiple occasions John

dilated patients' eyes when she should not have. *Id.* ¶¶ 9-10. Vazquez claims that John "was the worst candidate [she] ha[d] ever trained." *Id.* ¶ 11. For her part, Garrastegui says that she "heard of multiple incidents from [her] co-workers" and complaints from doctors claiming John performed poorly. Garrastegui Decl. ¶¶ 3, 5. Garrastegui also asserts that she informed John there were complaints about John's job performance but does not specify when those complaints occurred. *Id.* ¶¶ 17-18.

John's last day of employment was June 17, 2021. Pl.'s 56.1 ¶ 7. John asserts on that day, towards the end of her shift, Garrastegui called a meeting between herself, John, and Vazquez where "Garrastegui abruptly told Plaintiff she received negative feedback" and informed John she was being let go for a "general 'lack of effort.'" Compl. ¶¶ 42, 45-49. After her termination, John received unemployment benefits. Pl.'s 56.1 ¶ 23. She was approximately six months pregnant at that time. *Id.* ¶ 24.

Maggie Kruk, an employee and administrator at Brooklyn Eye Center, asserts that she was involved in the decision to terminate John from her employment. Declaration of Maggie Kruk ("Kruk Decl."), ECF 49-3, ¶ 1. Kruk asserts that John was terminated because she "received numerous complaints from co-workers and doctors regarding her work performance" and that John's "termination had nothing to do with her being pregnant." *Id.* ¶¶ 3-9. Both Kruk and Garrastegui provide the names of several other Brooklyn Eye Center employees who were pregnant while working at Brooklyn Eye Center. *Id.* ¶¶ 9-11; Garrastegui Reply Aff., ECF 51-2, ¶ 9.

## STANDARD OF REVIEW

To prevail on summary judgment, a movant must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

*accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 322. "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). "A fact is material if it might affect the outcome of the suit under the governing law." *Id.* In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

"The movant bears the burden of 'demonstrating the absence of a genuine issue of material fact.'" *Arkorful v. N.Y.C.*, 712 F. Supp. 3d 336, 348 (E.D.N.Y. 2024) (quoting *Celotex Corp.*, 477 U.S. at 323). "Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, 'the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "While circumstantial evidence may be sufficient to raise a genuine issue of material fact precluding the grant of summary judgment, a party cannot survive a motion for summary judgment by relying on mere speculation or conjecture as to the true nature of the facts." *Id.* (internal quotation marks and citations omitted).

Courts must use "an extra measure of caution" when resolving a motion for summary judgment in cases involving allegations of discrimination or retaliation "because direct evidence

5

of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (citation omitted).  However, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted).  Thus, even in the context of a discrimination case, "a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010), and courts may grant summary judgment against "discrimination claims in cases lacking genuine issues of material fact." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (citation omitted).

## DISCUSSION

### A. Sex and Pregnancy Discrimination Under Title VII and the NYSHRL

Under Title VII, the NYSHRL, and the NYCHRL, discrimination on the basis of pregnancy constitutes discrimination "on the basis of sex."  42 U.S.C. § 2000e(k); *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 63 (2d Cir.1995) (noting that the NYSHRL "provides the same sort of protection" regarding pregnancy discrimination as Title VII); *EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 837 (S.D.N.Y. Sept. 9, 2013) (holding pregnancy discrimination claim under NYCHRL requires only that Plaintiff demonstrate "that she has been treated less well than other employees because of her gender").

At summary judgment, both Title VII and NYSHRL discrimination claims are subject to the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).  *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *see Solomon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226, n. 9 (2d Cir. 2008) (Title VII and NYSHRL are "analytically identical").

Under this framework, the "plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination; it is then the defendant's burden to proffer a legitimate non-discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014) (citation omitted).

### 1. Prima Facie Case

To establish a prima facie case of discrimination, the plaintiff "must show: (1) [s]he belonged to a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Holcomb*, 521 F.3d at 138). The burden of establishing a prima facia case in these cases is "minimal." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *see also Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019). However, a plaintiff cannot establish a prima facie case based on "purely conclusory allegations of discrimination, absent any concrete particulars." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. denied*, 474 U.S. 829 (1985).

For purposes of summary judgment, Defendants do not dispute that John belonged to several protected classes based on her race, gender, and pregnancy. *See* Defs' Mem. at 12-13.

### a. John's Qualifications for her Position

Defendants contend that John was not qualified for her position as an eye technician because she was a probationary employee and because she was "incapable of learning and retaining the instructions and procedures necessary for the position." Defs' Mem. at 13. To meet the "de minimis" burden at the prima facie stage, *Tieu v. New York City Econ. Dev. Corp.*, 717 F. Supp.

3d 305, 322 (S.D.N.Y. 2024), "plaintiff need only show that she 'possesses the basic skills required for performance of the job.'" *Flores v. Buy Buy Baby, Inc.*, 118 F. Supp. 2d 425, 430 (S.D.N.Y. 2000) (quoting *Powell v. Syracuse University*, 580 F.2d 1150, 1155 (2d Cir. 1978)). Even if John did make the mistakes on the job that Defendants claim, *see* Vazquez Decl. ¶¶ 4-10; Melendez Aff. ¶¶ 7-8; Garrastegui Decl. ¶¶ 3-5; Kruk Decl. ¶ 8, such mistakes do not demonstrate that John was wholly unqualified. Despite her purported shortcomings in job performance, John was hired and retained as an eye technician for over three months, beyond the probationary period. *See* Defendants' Rule 56.1 Statement ("Defs' 56.1") ECF 38-1, ¶¶ 3-7. Although the parties dispute whether John received negative complaints, reviews, disciplinary actions, or other warnings regarding her job performance prior to the announcement of her pregnancy, Pl.'s 56.1 ¶ 20; Plaintiff's Memorandum of Law ("Pl.'s Mem.") ECF 45, at 12-13; John Decl. ¶ 6, there is no written evidence of any complaints or poor job performance prior to her pregnancy announcement.

Accordingly, Plaintiff has met her burden to go forward with respect to her qualifications. *See Flores*, 118 F. Supp. 2d at 430 (job qualifications inquiry met where plaintiff retained beyond probationary period and there was no written record of complaints).

### b. Adverse Employment Action

An adverse employment action is an action that imposes "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355 (2024). In other words, the alleged adverse employment action must have left the plaintiff "worse off, but need not have left her significantly so." *Id.* at 359. The decision in *Muldrow* overruled prior Second Circuit precedent which required that an adverse employment action be "*materially* adverse with respect to the terms and conditions of employment." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (per curiam) (citation omitted); *see Back v.*

*Hapoalim*, 24-CV-1064, 2024 WL 4746263, at *2 (2d Cir. Nov. 12, 2024).  The "materially adverse" standard described an action that is "more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Davis*, 804 F.3d at 235.[3]

Here, John complains that: (1) she was assigned to work at a different Brooklyn Eye Center location than she normally worked, John Decl. ¶ 10, *see* Compl. ¶ 57; (2) her supervisor requested Plaintiff's work be gathered for inspection, Pl.'s Mem. at 11; Compl. ¶ 32; (3) Garrastegui and Vazquez stopped saying good morning to John and stared at her stomach, making her uncomfortable, John Decl. ¶ 9-10; Compl. ¶ 31; (4) she was denied advanced training, Pl.'s Mem. at 11, Compl. ¶ 57; and (5) she was terminated,  Pl.'s Mem. at 11, Compl. ¶ 53.

John's termination from her employment clearly constitutes an adverse employment action. *See Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 85 (2d Cir. 2015).  However, John's claim that she was assigned to work at a different Brooklyn Eye Center location on certain shifts without a showing of any harm cannot be considered an adverse employment action under Title VII.  "Generally, a change in shift time or location that is merely inconvenient does not rise to the level of an adverse employment action."  *Forsythe v. New York City Dep't of Citywide Admin. Servs.*, 733 F. Supp. 2d 392, 400 (S.D.N.Y. 2010), *aff'd* 428 F. App'x 40 (2d Cir. 2011); *see Back*, 2024 WL 4746263, at *2 (plaintiff must "sufficiently allege[ ] that she was harmed"

---

[3] There is some disagreement among district courts as to whether *Muldrow* applies to Title VII cases outside of the context of involuntary job transfers.  *See, e.g.*, *Rackley v. Constellis, LLC.*, 22-CV-4066 (GHW) (RWL), 2024 WL 3498718, at *21 (S.D.N.Y. June 17, 2024) ("It is uncertain whether the Supreme Court's 'some harm' standard . . . applies to discrimination claims beyond the involuntary transfer context."); *Cavanaugh v. Wal-Mart Stores E., LP.*, 22-CV-1908 (MEM), 2024 WL 2094010, at *4 (M.D. Pa. May 9, 2024) (declining to apply the "some harm" standard to a case where the plaintiff's alleged adverse employment action was not an involuntary transfer); *Anderson v. Amazon.com, Inc.*, No. 23-CV-8347 (AS), 2024 WL 2801986, at *10 (S.D.N.Y. May 31, 2024) (applying the "some harm" standard outside the involuntary transfer context).  The Second Circuit has not yet opined on this issue.  *See Back*, 2024 WL 4746263 (applying 'some harm' standard in context of Title VII involuntary transfer case).  However, this Court agrees that "Because the basis for the Supreme Court's decision was the express language of Section § 200e-2(a)(1), the some harm standard likely does apply outside the involuntary transfer context."  *McCarthy v. Motorola Solutions, Inc.*, 21-CV-4020 (RER), 2024 WL 3965950, at *10, n. 3 (E.D.N.Y. Aug. 28, 2024).

from the allegedly adverse employment action).  Further, Defendants argue that John's relocation was routine, and that all employees were required to work at different locations depending on patient appointments.  Defs' Mem. at 15; *see* Garrastegui Decl. ¶ 10.  "[A]n employee who is required to do what every other similarly situated [employee] is required to do does not suffer an 'adverse employment' action."  *Valenti v. Massapequa Union Free Sch. Dist.*, 03-CV-1193 (JFB) (MLO), 2006 WL 2570871, at *10 (E.D.N.Y. Sept. 5, 2006).

The other incidents which John claims as adverse employment actions fare no better.  That Garrastegui requested John's work be collected for inspection is not an adverse action because "alleged close monitoring or observation by an employer is not an adverse action."  *Smith v. New York & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 334 (S.D.N.Y. 2020) (finding plaintiff failed to present evidence of negative consequences resulting from increased scrutiny).  Likewise, John's allegations that Garrastegui and Vazquez didn't say good morning and stared at her stomach do not constitute adverse actions.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("Title VII, we have said, does not set forth a 'general civility code for the American workplace."); *see also Mcloughlin v. Vill. of Southampton*, 23-CV-6586 (GRB) (AYS), 2024 WL 4189224, at *4 (E.D.N.Y. Sept. 13, 2024) (applying *Muldrow*'s 'some harm' standard and finding that demeaning comments do not constitute adverse employment actions).  Lastly, while denial of training can constitute an adverse employment action, there is no adverse employment action when an employee cannot show resulting adverse consequences.  *See Hill v. Rayboy-Braustein*, 467 F. Supp. 2d 336, 352-53 (S.D.N.Y. 2006).  Here, Plaintiff has set forth no evidence to support such an allegation.

### c.   Inference of Discrimination

The last element of the prima facie case requires Plaintiff to present evidence that her termination was made "under circumstances giving rise to an inference of discriminatory intent." *Holcomb*, 521 F.3d at 138 (citations omitted).   At summary judgment, the Court must determine "whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive," not to "decide what inferences should be drawn."   *Tieu*, 717 F. Supp. 3d at 322 (quoting *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 38 (2d Cir. 1994)).   The plaintiff's burden at this step is "de minimis."   *Chambers*, 43 F. 3d at 38.

"Temporal proximity between the plaintiff's termination and her pregnancy, childbirth, or related medical condition can raise an inference of discrimination."   *Briggs v. Women in Need, Inc.*, 819 F. Supp. 2d 119, 128 (E.D.N.Y. 2011); *see Lenzi*, 944 F.3d at 108.   In cases alleging termination following a plaintiff's announcement of her pregnancy, the temporal proximity must be sufficiently close.   *Rinsler v. Sony Pictures Ent., Inc.*, 02-CV-4096 (SAS), 2003 WL 22015434, at *6 n.25 (S.D.N.Y. Aug. 25, 2003); *compare id.* (finding no "suspicious timing" where relying solely on temporal proximity, and the termination occurred three months after company found out about pregnancy), *with Lenzi*, 944 F.3d at 108 (finding inference where adverse action occurred three days after announcement of pregnancy); *and with Flores*, 118 F. Supp. 2d at 430-31 (finding inference where termination occurred one month after disclosure of pregnancy); *Smith v. K & F Indus., Inc.*, 190 F. Supp. 2d 643, 649 (S.D.N.Y. 2002) (same).

Here, John told Vazquez she was pregnant in early June 2021, John Decl. ¶ 6, and Plaintiff was terminated from her employment on June 17, 2021. *Id.* ¶ 19; Pl.'s 56.1 ¶ 7.[4]  This timeline of events is sufficient to raise the inference of discrimination at the prima facie stage.

Separately, Defendants assert that there can be no inference of discrimination because Garrastegui, who informed Plaintiff that she was fired, did not know John was pregnant.  Defs' Mem. at 16.  Courts have held that a plaintiff bringing Title VII claims must make "a prima facie showing that a defendant knew of a plaintiff's protected status[.]"  *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 81 (2d Cir. 2005) (holding that plaintiff's proffer of evidence that some employees knew of her protected status did not permit an inference that those who actually participated in her termination had such knowledge).  In the context of pregnancy discrimination, the

> 'obviousness' of an employee's pregnancy necessarily 'varies, both temporally and as between different affected individuals.'  Thus, where a plaintiff was visibly pregnant at the time of the adverse employment action or where she alleges her own disclosure of pregnancy to the employer before the adverse action, such evidence suffices to raise an issue of employer knowledge and to preclude an award of summary judgment.

*Id.* (quoting *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82, F.3d 578, 581 (3d Cir. 1996)).

Garrastegui denies knowledge of Plaintiff's pregnancy, Garrastegui Decl. ¶ 7-8, and John has not proffered have any evidence that Garrastegui or any other Defendants knew of her pregnancy.  However, it is undisputed that John did inform Vazquez, who was her direct supervisor, that she was pregnant.  John Decl. ¶ 6; Vazquez ¶ 12.  John asserts that both Garrastegui and Vazquez were present in the meeting when Garrastegui fired John, Compl. ¶ 42[5] – and no party has made any assertion that it was Garrastegui alone who made the decision to terminate

---

[4] To the extent that either party asserts that John's pregnancy was disclosed on June 2, 2021, this date is also sufficiently close in time to her termination to permit an inference of discrimination.

[5] This allegation is taken from Plaintiff's unverified Complaint.  The issue is not addressed in the parties' depositions or raised elsewhere in the papers.

John's employment at Brooklyn Eye Center.  Vazquez testified that she does not know who made the decision to terminate John's employment and that management told her about the decision—but does not recall how or when.  Virtual Deposition of the Defendant, Kristina Vazquez ("Vazquez Dep.") ECF 46-4, 36:17-37:20.  Garrastegui testified that she and Kruk made the termination decision, but that Vazquez and "other senior staff" were in charge of evaluating John's performance.  Virtual Deposition of Gisel Garrastegui ("Garrastegui Dep.") ECF 46-5, 33:8-12.  Therefore, a jury could reasonably infer that Vazquez was involved in John's termination—regardless of who broke the news to John.  *See Baffa v. STAT Health Immediate Med. Care, P.C.*, 11-CV-4709 (JFB) (GRB), 2013 WL 5234231, at *2 (E.D.N.Y. Sept. 17, 2013).

Plaintiff "need not offer evidence indicating that everyone [who] participated in her termination knew she was pregnant, just that any of them did."  *Lambert v. McCann Erickson*, 543 F. Supp. 2d 265, 280 (S.D.N.Y. 2008) (citing *Woodman*, 411 F.3d at 87).  The "'impermissible bias of a single individual . . . may taint the ultimate employment decision . . . even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role . . . in the process.'"  *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 125-26 (2d Cir. 2004) (quoting *Bickerstaff v. Vassar College*, 196 F.3d 435, 450 (2d Cir. 1999)).[6]  Therefore, the fact that John's direct supervisor knew of Plaintiff's pregnancy is adequate at this stage to raise an inference of discrimination.  *Compare Lambert*, 543 F. Supp. 2d at 279 (finding direct supervisor's knowledge of pregnancy sufficient to raise an inference of discrimination) *with Geraci*, 82 F.3d at 582 (finding no genuine issue of fact as to employer's knowledge of pregnancy where all managers filed unrebutted declarations

---

[6] It should be noted that this "taint [on] the ultimate employment decision," *id.*, does not arise because knowledge is imputed to all of the decision makers.  *Lambert*, 543 F. Supp. 2d at 280 (citing *Woodman*, 411 F.3d at 87-88).  Rather, the wrongdoing derives from the impact that the bias-motivated action or recommendation had on the employment decision.  *Id.*

disclaiming knowledge and the only co-worker who knew plaintiff was pregnant testified that he had not told management).

### 2. Legitimate Nondiscriminatory Reason

Once the plaintiff establishes a prima facie case, "a presumption arises that more likely than not the adverse conduct was based on the consideration of impermissible factors." *Vega*, 801 F.3d at 83. The burden of production then shifts to the defendant to offer a "legitimate, nondiscriminatory reason for the disparate treatment." *Id.*

Defendants argue they have established a legitimate, nondiscriminatory reason for John's termination: that Plaintiff "was unable to do patient work ups properly," and had an "inability to follow instructions[.]" Defs' Mem. at 18. Poor job performance is a legitimate, nondiscriminatory reason for termination. *Tubo v. Orange Reg'l Med. Ctr.*, 690 F. App'x 736, 740 (2d Cir. 2017) (observing "continued poor performance and inability to lead and manage efficiently" was legitimate reason for termination); *accord Zann Kwan v. Andalex Group LLC*, 737 F.3d 834 (2d Cir. 2013).

### 3. Pretext

Because Defendant has articulated a legitimate, nondiscriminatory reason, the presumption of discriminatory intent drops away and the burden shifts back to Plaintiff to show "by a preponderance of the evidence, that the employer's justification is a pretext for discrimination." *Lenzi*, 944 F.3d at 108 (citation omitted). At this stage, Plaintiff may show that "the employer's stated justification for its adverse action was nothing but a pretext for discrimination;" but it is not *required*. *Bart v. Golub Corp.*, 96 F.4th 566, 567 (2d Cir. 2024), *cert. denied*, 23-CV-1346, 2024 WL 4426694 (U.S. Oct. 7, 2024); *see also* 42 U.S.C. § 2000e-2(m) (race, color, or sex must be "a motivating factor" for employment decision). Rather, Plaintiff "need only show that that the

employer's stated reason—even if true or factually accurate—was not the 'real reason,' in the sense that it was not the *entire* reason due to a coexisting impermissible consideration." *Bart*, 96 F.4th at 575. In doing so, Plaintiff bears the burden to produce "admissible evidence . . . show[ing] circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Id.* at 576 (quoting *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016) (alterations in original).

Here, Plaintiff argues that the temporal proximity of her pregnancy announcement, that she did not receive negative performance evaluations, and the fact that she survived the probationary period justifies denying Defendants' motion for summary judgment. Pl.'s Mem. at 12-13; *see* John Decl. ¶ 6. Plaintiff also asserts Defendants' performance-related reasons for her termination lack credibility. Pl.'s Mem. at 12.

In support of their non-discriminatory reasons for John's termination, Defendants have put forth evidence that John performed poorly on the job. Defendants submitted a complaint that was sent on June 10, 2021, after John announced her pregnancy.[7] Defs' 56.1 ¶ 8. The complaint is an email sent by Sally Chetrit to Garrastegui and Maggie Kruk on June 10, 2021, complaining about John's poorly performed patient work up. Dr. Sally Chetrit Email, ECF 50-5. The only written record put forth by Defendants from the period prior to Plaintiff's pregnancy announcement are e-mails requesting that Plaintiff copy her supervisors when requesting to leave work early. Defs' Mem. at 18; Defs' 56.1, ¶ 10. While the contemporaneous record of complaints regarding John's performance is slim, Defendants' declarations assert that John was incapable of performing her

---

[7] Defendants state in their memorandum that Plaintiff disclosed her pregnancy on June 2, 2021. *See* Defs' Mem. at 8. Therefore, there is no dispute that this negative performance review email came after the pregnancy announcement – even assuming Plaintiff disclosed her pregnancy to Vazquez on June 10, 2021 as stated in John's Declaration.

duties from the period prior to her pregnancy announcement.  Defs' Mem. at 13.  Vazquez submitted a declaration stating that Plaintiff could not retain information, repeatedly asked the same questions regarding patient work ups, failed to make necessary progress, and in one instance "dangerous[ly]" dilated the eye of a patient.  Vazquez Decl. ¶¶ 4-7, 9.  Vazquez also claims that "Plaintiff was the worst candidate [she] ever trained."  *Id.* ¶ 11.  Melendez states that John had "difficulty grasping the training."  Melendez Decl. ¶ 9; *see id.* ¶¶ 4-8.  Garrastegui claims that she "heard" of multiple incidents or complaints about John's job performance.  Garrastegui Decl. ¶¶ 3, 5.  While the substance of the complaints made to Garrastegui, including the June 10, 2021 email from Sally Chetrit, are inadmissible hearsay, they are admissible to show the effect these complaints had on Garrastegui.  *See* Fed. R. Evid. 801(c); *see also Ramsaran v. Booz & Co. (N.A.), Inc.*, 14-CV-708 (GHW), 2015 WL 5008744, at *11 (S.D.N.Y. Aug. 24, 2015).  This is particularly relevant here, where the crucial issue is whether Defendants' motivation in terminating Plaintiff was motivated by impermissible discrimination.  *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff.  We are interested in what '*motivated* the employer[.]'" (citations omitted)).

Plaintiff argues that Defendants' claims "lack[] credibility,"  Pl.'s Mem. at 12, but she does not attempt to dispute Defendants' assessment of her job performance or that such complaints occurred.  Nor does she argue the extent to which these complaints were factored into the decision to terminate her employment.  John merely claims that she did not have notice of such complaints. *Id.*; *see* John Decl. ¶ 11 ("The only criticism I remember receiving from a direct supervisor during my probationary period and prior to disclosing my pregnancy was to 'pick up the pace' from Garrastegui when completing patient work ups.").  Vazquez disputes this.  Reply Declaration of

16

Kristina Vazquez ("Vazquez Reply Decl.") ECF 51-2, ¶ 8 (stating Vazquez "had to remind the Plaintiff to read the patient's prescription carefully.").  But whether John received notice of the complaint is not a genuine issue of material fact relevant to her discrimination claims.  What matters is whether Defendants believed Plaintiff's job performance was deficient.  *See Ramsaran*, 2015 WL 5008744, at *11 (Even assuming [the defendant's] assessment of [the] plaintiff's job performance *was* inaccurate, 'what is significant is that they based their decision to dismiss plaintiff on *that* belief,' rather than her gender or pregnancy.").

Under the circumstances presented in this case, John's argument – that lack of notice, combined with her continued employment nine days past the probationary period, demonstrates Defendants' proffered reason for termination is mere pretext – is unavailing.   To demonstrate pretext, a plaintiff may show that there are "weaknesses, implausibilities, inconsistencies or contradictions in the employer's proffered legitimate non-discriminatory reasons for its action[.]" *Brierly v. Deer Park Union Free School Dist.*, 359 F. Supp. 2d 275, 291 (E.D.N.Y. 2005) (citations omitted).  The Second Circuit has held that a defendant's failure to discharge a plaintiff for a significant period of time, during which the employee was allegedly performing poorly, was inconsistent with its claim of performance and thereby indicated pretext – thus making summary judgment inappropriate.  *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 39 (2d Cir. 1994).  Here, there are several shortcomings in John's argument.  Unlike *Chambers*, where the plaintiff had been on the job for nine months despite alleged poor performance, John only remained past the probationary period for nine days.  Further, as stated above, John does not deny any of the allegations forming Defendants' basis for her termination.  *See Flores*, 118 F. Supp. 2d at 432 ("The key here is that plaintiff disputes the circumstances of the first reason for her termination,

denies engaging in the behaviors that allegedly formed the primary basis for her termination" in addition to claiming lack of notice about these behaviors).

"Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage." *Zann Kwan*, 737 F.3d at 847 (finding employer's inconsistent explanations for termination and very close temporal proximity created genuine issue of material fact of pretext). However, close temporal proximity combined with a lack of negative performance reviews, successful transition from probationary period without warning, and evidence that other employees accused of performance problems did receive such warnings before termination, may be sufficient to survive summary judgment. *Flores*, 118 F. Supp. 2d at 431 (noting "Defendant's claim that [plaintiff] performed poorly conflicts with its failure to warn her or terminate her at the end of her probationary period."). In asserting that summary judgment must be denied, Plaintiff relies in part on *Smith v. K & F Industries, Inc.*, 190 F. Supp. 2d 643 (S.D.N.Y. 2002), but makes clear that case is distinguishable because the facts there involved "not simply the temporal proximity . . . but also numerous pregnancy-related comments made by the employer combined with the lack of credibility of the employer's proffered non-discriminatory reason for termination." Pl.'s Mem. at 11-12. Plaintiff has not asserted that anyone at Brooklyn Eye Center made pregnancy-related comments. She also suggests that "Plaintiff experienced disparate treatment compared to her colleagues" but provides no evidence in support.[8] *See id.* at 12; *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 85 (2d Cir. 2005) (nothing that "conclusory statements conjecture or speculation are inadequate to defeat a motion for summary judgment"). It is undisputed that Plaintiff's

---

[8] To the contrary, Defendants submit affidavits that Brooklyn Eye Center has employed numerous other employees before, during, and after the course of their pregnancies. *See* Defs' Mem. at 18; Garrastegui Decl. ¶ 23; Kruk Decl. ¶ 9; Vazquez Reply Decl. ¶ 9; Garrastegui Reply Decl. ¶ 5. Plaintiff has not submitted any evidence in response and herself admits that there was another pregnant employee working at Brooklyn Eye Center during her tenure who she does not believe was discriminated against. *See* John Dep. at 35:8-:13. These facts cut against Plaintiff's argument to permit an inference of discrimination.

termination occurred just nine days after the close of her probationary period – *i.e.* at the end of her probationary period when a determination regarding her employment performance would be made. *Compare Baffa*, 2013 WL 5234231, at *10 (finding no inference of discrimination based on temporal proximity where plaintiff was terminated just a few days outside of her 90-day probationary period); *with Flores*, 118 F. Supp. 2d at 431 (finding permissible inference of discrimination based in part on timing where plaintiff was retained for several months past probationary period, in addition to evidence that similarly-situated employees received performance warnings before termination).

The Court finds Plaintiff has not brought forth sufficient evidence upon which a rational jury could find that her termination was a pretext for Defendants' discrimination on the basis Plaintiff's pregnancy or sex. Accordingly, Plaintiff's Title VII and NYSHRL claims are dismissed.

### B. Retaliation Under Title VII and the NYSHRL

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). The NYSHRL similarly makes it unlawful for an employer to retaliate or discriminate against an employee because she "has opposed any practices forbidden under this article or because . . . she has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. Law § 296(7).

As with discrimination claims, retaliation claims under both statutes are analyzed using the *McDonnell Douglas* framework. *See Zann Kwan*, 737 F.3d at 843. Plaintiff must first make out

a prima facie case establishing: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 107 (2d Cir. 2011) (citations omitted).

Defendant argues that Plaintiff cannot show she participated in a protected activity, that she suffered an adverse employment action, or that there is any causal connection between an alleged adverse action and the protected activity. Defs' Mem. at 21-23. Plaintiff does not address in her opposition brief whether there is evidence to support this claim. "Where, as here, a counseled non-moving party submits 'a partial response arguing that summary judgment should be denied as to some claims while not mentioning others,' that response 'may be deemed an abandonment of the unmentioned claims.'" *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) (*quoting Jackson v. Federal Express*, 766 F.3d 189, 195 (2d Cir. 2014) ("summary judgment is a particularly appropriate time for non-moving party to decide whether to pursue or abandon some claims"). The Court therefore finds that these claims are abandoned. *See Doughty v. Dep't of Dev. Servs. STS*, 607 F. App'x 97, 98 (2d Cir. 2015) (affirming dismissal of retaliation claim for being abandoned); *Collins v. Federal Express Corp.*, 22-CV-1472 (VDO), 2024 WL 1774123 (D. Conn. Apr. 25, 2024) (dismissing retaliation claims as abandoned at summary judgment).

Even if Plaintiff's retaliation claims were not abandoned, Plaintiff cannot establish a prima facie case of retaliation in several respects. The only protected activity complained of – making complaints of discrimination – occurred on June 21, 2020, *afte*r her termination. Compl. ¶ 68. Therefore, there is no causal relationship between her complaints of gender and pregnancy discrimination and the adverse employment action. *See Dollman v. Mast Indus., Inc.*, 731 F. Supp. 2d 328, 340 (S.D.N.Y. 2010).

20

Separately, Plaintiff suggests that her request for additional training gave rise to retaliation including "ridicule and harassment" and being denied that training.  *See* Compl. ¶¶ 69; 100-01; Pl.'s 56.1 ¶ 20.  But a request for additional training plainly does not constitute a protected activity under Title VII and NYSHRL.  "[I]n order to constitute a protected activity for purposes of a retaliation claim, the complaint must be related to discrimination on a basis prohibited by Title VII." *Bennett v. Hofstra Univ.*, 842 F. Supp. 2d 489, 500 (E.D.N.Y. 2012); *accord Mi-Kyung Cho v. Young Bin Café*, 42 F. Supp. 3d 495, 508 (S.D.N.Y.) ("Protected activity . . . is limited to actions which complain or oppose the discriminatory practices prohibited under [the] statutes [upon which plaintiff brings her claims].").  There is nothing to suggest that Plaintiff's request for more training raised an issue of disparate treatment due to her gender or pregnancy status to her employer.  Accordingly, Plaintiff's retaliation claims are dismissed.

## C.  Hostile Work Environment Under Title VII and the NYSHRL

Hostile work environment claims under both Title VII and NYSHRL are governed by the same standard: "In order to prevail on a hostile work environment claim, a plaintiff must make two showings: (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and (2) that there is a specific basis for imputing the conduct creating the hostile work environment to the employer." *Summa v. Hofstra University*, 708 F.3d 115, 123-24 (2d Cir. 2013).  Courts must examine "all the circumstances" in determining whether an environment is "hostile" or "abusive," including the following factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Defendant argues that John cannot demonstrate the alleged misconduct is so severe or pervasive such that a reasonable person would find it hostile or abusive, or that the actions create a workplace that is "permeated" with hostile conduct so as to alter the conditions of John's employment. Defs' Mem. at 26-27. In her Opposition papers, Plaintiff does not address the legal arguments raised by Defendants and does not identify any evidence in the record to support the hostile work environment claim. *See generally* Pl.'s Mem. As with the retaliation claims, failure to respond in opposition results in waiver of these claims. *See Camarda*, 673 F. App'x at 30; *see also Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128 (2d Cir. 2016) (affirming dismissal of summary judgment where plaintiff failed to address hostile work environment claims in opposition); *Arkorful*, 712 F. Supp. 3d at 360 (dismissal on same grounds). Here, Plaintiff makes "no effort whatsoever to explain why the factual events that [Plaintiff] experienced . . . rise to the level of a hostile work environment under the relevant legal standards[,]" let alone identify the particular factual events. *Arkorful*, 712 F. Supp. 3d at 360. In her opposition papers, Plaintiff merely "incorporates by reference" the facts plead in the Complaint, Pl.'s Mem. at 4, but offers nothing more by way of explanation. Moreover, it is axiomatic that a court cannot rely upon the allegations in an unverified complaint at summary judgment. *See supra* n. 2 (citing *Caro Capital*, 653 F. Supp. 3d at 132).

Accordingly, this Court finds that John's hostile work environment claims have been abandoned and that Defendants are entitled to summary judgment on these claims.

### D. NYCHRL Claims

John also brings parallel discrimination claims under the NYCHRL for sex and pregnancy discrimination, Compl. at 15, hostile work environment, *id.* at 17, and retaliation, *id.* at 19, against all Defendants; and alleges violation of NYCHRL for aiding, abetting, compelling and coercing

22

religious forbidden acts against Vazquez and Garrastegui. *Id.* at 20. Although Defendants style their summary judgment motion as one seeking to dismiss Plaintiff's "action in its entirety," *see* Defs' Mem. at 11, Defendants do not address mention Plaintiff's NYCHRL claims once, *see generally id.* Accordingly, the court construes the motion as not directed at Plaintiff's NYCHRL claims.

Having dismissed all of Plaintiff's federal law claims, as well as the NYSHRL claims governed under the same standards as their federal counterparts, this Court declines to exercise supplemental jurisdiction over Plaintiff's NYCHRL claims. A district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Courts in this District routinely decline to exercise supplemental jurisdiction over a plaintiff's NYCHRL claims after dismissing all federal claims. *See, e.g.*, *Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 37 (E.D.N.Y. 2015) (declining to exercise supplemental jurisdiction over NYCHRL claims after granting defendants summary judgment as to ADEA and NYSHRL age discrimination and retaliation claims); *Bunting v. Gap, Inc.*, 714 F. Supp. 3d 152 (E.D.N.Y. 2024). Furthermore, "recognizing that the NYCHRL has a lower threshold of proof than its federal counterparts, comity suggests that the state courts should resolve these local law claims." *Thomas v. City of New York*, 953 F. Supp. 2d 444, 462 (E.D.N.Y. 2013) (citing *Mihalik v. Credit Agricole Cheuvreaux North America, Inc.*, 715 F.3d 102 (2d Cir. 2013). Accordingly, Plaintiff's NYCHRL claims are dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, the Court grants Defendant's motion for summary judgment as to Plaintiff's federal and NYSHRL claims, and dismisses Plaintiff's NYCHRL claims without prejudice. The Clerk of Court is directed to enter judgment accordingly.

**SO ORDERED.**

_/s/_

ORELIA E. MERCHANT
United States District Judge

Dated January 28, 2025
Brooklyn, New York